IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEVE P. SHULTZABERGER,

    Plaintiff,

v.                                Case No. 2:17-cv-01028-MV-KRS

THOMAS E. HALL and RENE HALL,
next of friends to MADISON R.
WALTH, and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

    Defendants.

## DEFENDANT STATE FARM'S
## MOTION TO BIFURCATE AND STAY

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through its attorneys, Miller Stratvert P.A., respectfully moves this Court to bifurcate and stay Plaintiff's extra-contractual claims against State Farm until after a jury determines case value. State Farm conferred with Plaintiff Counsel and determined that this Motion is opposed.

### I.    INTRODUCTION

On May 22, 2013, GEICO insured, Madison Walth, pulled out from Enchanted Forest Road onto State Route 48, near Ruidoso, New Mexico, and struck State Farm insured, Steve Shultzaberger. Mr. Shultzaberger alleges personal injuries as a result of this accident. He has settled with Madison Walth, her parents (Tom and Renee Hall), and GEICO. In this lawsuit, Mr. Shultzaberger seeks additional compensation under his underinsured motorist bodily injury coverage ("UMBI") with State Farm.

The GEICO liability limit was $100,000. After offset, Mr. Shultzaberger has a State Farm UMBI limit of $150,000, not including credits and offsets that may apply due to payments under the State Farm medical payments coverage.

Mr. Shultzaberger has also pleaded extra-contractual claims pertaining to State Farm's claims handling, alleging that State Farm's actions "constitute unfair insurance claims practice." *See* Complaint, Doc. 1-2, ¶¶ 17-20.

State Farm questions the nature, extent, and duration of Plaintiff's claimed injuries. Mr. Shultzaberger has a history of chronic neck problems dating back to at least to 2011. Just months before the motor vehicle accident, Mr. Shultzaberger went through a right sided C4-C6 anterior laminectomy and foraminotomy to address advanced degenerative disc disease and advanced degenerative joint disease, including grade 1 spondylolisthesis. As such, State Farm contends that Mr. Shultzaberger's post-accident presentation is largely unchanged and is a continuation of his preexisting medical conditions.

State Farm further denies and disputes the Unfair Practices Act claim and contends that it has reasonably and appropriately handled Mr. Shultzaberger's claims.

Plaintiff's right to recover on his extra-contractual claims is predicated on the determination of value of his UMBI benefits. Therefore, the value of Plaintiff's UMBI claim must be determined prior to any extra-contractual claims can be asserted.

## II.   POINTS AND AUTHORITIES

**A. The value of Plaintiff's UMBI claim must be determined before "bad faith."**

Whether State Farm acted in bad faith cannot be determined without first determining the value of Plaintiff's UMBI claim. "[B]ifurcation (or dismissal) is mandatory because, under New Mexico law, resolution of the UMBI claim is a condition precedent to [the insured] bringing

claims for bad faith." *Aragon v. Allstate Ins. Co.*, 185 F. Supp. 3d 1281, 1286 (D.N.M. 2016). In *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, 135 N.M. 397, the New Mexico Supreme Court held that a third party claimant could sue an insurer for unfair claims practice for failure to settle under the Insurance Code.  However, the Court also held that such a claim "may only be filed *after* the conclusion of the underlying negligence litigation, and *after* there has been a judicial determination of fault in favor of the third party and against the insured." *Id.* ¶ 25. "Because the legislative purpose behind New Mexico's Uninsured Motorist Act 'was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance,' Hovet's reasoning also applies to first party claims." *Aragon*, 185 F. Supp. 3d at 1284 (quoting *Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 2007-NMSC-015, ¶ 8, 141 N.M. 387.

Allowing an insurer "its day in court to litigate its contract defenses is especially important in light of [the insured's] other claims against [the insurer], including claims for bad faith and punitive damages. Bad faith is determined by whether or not the insurer was justified in refusing coverage or offering less than the total coverage." *Burge v. Mid-Continent Cas. Co.*, 1997-NMSC-009, ¶ 20, 123 N.M. 1.  Moreover, "the concept of bad faith failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy." *Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 1994-NMCA-007, ¶ 17, 117 N.M. 82.

Disagreeing with Plaintiff's evaluation of the claim and negotiating does not constitute bad faith. To establish a claim for bad faith to settle in New Mexico, Plaintiff must prove that State Farm refused to pay or delayed in paying the claim for "reasons which are frivolous or unfounded."  *See* UJI 13-1702 NMRA (Bad faith failure to pay a first party claim.); *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004–NMSC–004, ¶¶ 3, 18, 135 N.M. 106. The term

"unfounded" in this context "means an utter or total lack of foundation for an assertion of nonliability - an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim." *Jackson Nat. Life Ins. Co. v. Receconi,* 1992-NMSC-019, ¶ 56, 113 N.M. 403.  Accordingly, it is not bad faith to fail to pay a claim when there are "legitimate questions regarding the amount of . . . claimed damages."  *See United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 1985-NMSC-090, ¶ 17, 103 N.M. 480.

Other courts have agreed with the New Mexico Supreme Court in holding that a dispute over the value of a claim is not a basis for a bad faith action. *See, e.g., Lias v. State Farm Mut. Auto. Ins. Co.*, 45 S.W.3d 330, 335 (Tex. Ct. App. 2001); *Benton v. Allstate Ins. Co.*, 2001 WL 210685, *7 (USDC C.D. Cal., Feb. 26, 2001) ("an insurer is entitled to withhold payment 'until it can find out on its own to a measure of certainty' that the benefits claimed by plaintiff were actually owed"); *Baker v. State Farm Ins. Co.*, No. 99-COA-1314, 2000 WL 699646, at *1 (Ohio Ct. App., April 27, 2000) ("a dispute as to the value of a claim does not in and of itself constitute bad faith"); *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp.2d 583 (E.D. Penn. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000) (same); *Manis v. Hartford Ins. Co.*, 1984 OK 25, 681 P.2d 760 (when facts are in dispute, the insurer has a right to have the dispute settled in a judicial forum). The reason for this conclusion is that a personal injury claim includes various intangibles such as pain and suffering which render it harder to evaluate than a static property damage claim.  *Evangelista v. Nationwide Ins. Co.*, 726 F. Supp. 1057, 1060 (S.C. Miss. 1988).

An insurer is not guilty of bad faith simply because the insured believes her claim is worth more than the insurer offers.  "The offer must be, as a matter of law, 'an intentional wrong, insult, abuse, or such gross negligence as to consist of an independent tort.'" *Id.* An insurer

breaches its duty of good faith and fair dealing only when the insurer had *no reasonable basis* for denying or delaying payment of a claim.  *Lias*, 45 S.W.3d at 334.

State Farm never denied Plaintiff's claim.  The value of Plaintiff's UMBI claim has not yet been determined.  As such, bifurcation is mandatory because resolution of the UMBI claim is a condition precedent to Plaintiff bringing bad faith claims. State Farm has a right to first litigate the dispute over value before any extra-contractual claims are brought. If a jury agrees with State Farm's evaluation of damages, then there cannot be any "bad faith." Until the value of Plaintiff's UMBI claim is decided, extra-contractual claims should not be brought.

**B. Separate trials will be conducive to expedition and economy.**

Rule 42(B) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(B).

Bifurcation and stay of Plaintiff's extra-contractual claims would promote convenience and judicial efficiency. A determination of value is a pre-requisite to any bad faith claim, and bifurcation would best serve judicial efficiency by focusing this litigation on value first. "Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may eliminate the need to adjudicate one or more other claims." *Aragon*, 185 F. Supp. 3d at 1285 (citing *Mandeville v. Quinstar Corp.*, 109 Fed.Appx. 191, 194 (10th Cir.2004) (unpublished)). The parties would spend far less time and judicial resources only conducting discovery on value without joining extra-contractual claims simultaneously, which would consume considerable more resources.

There exists the very real likelihood that resolution of the primary issue will render the issue of bad faith moot. This would certainly be the case if the jury decided that the value of

damages suffered by Plaintiff is less than the money he has already recovered from the tortfeasor and State Farm. When "Defendant was not contractually obligated to pay under the policy, it follows that Plaintiff cannot prevail on its claim that Defendant acted in bad faith by denying…claim without adequate investigation." *Charter Servs. V. Principal Mut. Life Ins. Co.*, 1994-NMCA-007, ¶ 20, 117 N.M. 82. In this case "the jury's determination in the primary claim may eliminate the need for a trial on the secondary claims. Thus, the procedure is less confusing to the jury and promotes judicial economy." *Baum v. Orosco*, 1987-NMCA-102, ¶ 16, 106 N.M. 265.

**C. Failure to bifurcate claims would result in significant prejudice to State Farm.**

If Plaintiff's contractual and extra-contractual claims are tried together, the jury would hear evidence regarding extra-contractual claims which could taint the jury's view on the underlying case. *See Oulds v. Principal Mut. Life Ins. Co.,* 6 F. 3d 1431, 1435-36 (10th Cir. 1993) (affirming district court's bifurcation of contract and bad faith claims to avoid potential prejudice to the insurer). It is appropriate to seek to avoid the danger of "an atmosphere which will produce an unconscious influence upon the triers of fact." *Mendenhall v. Vandeventer*, 1956-NMSC-064, ¶ 7, 61 N.M. 277. The jury hearing potential evidence of bad faith will certainly taint its ability to fairly decide the issue of uninsured motorist benefits. Moreover, bifurcation would avoid the prejudice that would arise if State Farm were required to respond to consuming discovery regarding bad faith claims that would be irrelevant if Plaintiff fails on his contractual claims.

Thus, bifurcation and stay of Plaintiff's extra-contractual claims would further judicial efficiency and avoid prejudice.

### III.     CONCLUSION

The value of Plaintiff's UMBI claim must be determined before any extra-contractual claim against State Farm is ripe. Further, a bifurcation and stay of Plaintiff's extra-contractual would best further convenience and avoid prejudice.

WHEREFORE, State Farm respectfully requests that the Court enter an order bifurcating Plaintiff's extra-contractual claims and that all proceedings as to Plaintiff's extra-contractual claims be stayed, including discovery, pending resolution of the remaining claims, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

MILLER STRATVERT P.A.

By */s/ Todd A. Schwarz*
    Todd A. Schwarz
    Jesika M. Ulibarri
    Attorneys for Defendant State Farm
     Mutual Automobile Insurance Company
    Post Office Box 25687
    Albuquerque, NM 87125
    Phone: (505) 842-1950
    Fax: (505) 243-4408
    tschwarz@mstlaw.com
    julibarri@mstlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of December, 2017, a copy of the foregoing was electronically filed through the CM/ECF system, which caused the following participating CM/ECF counsel to be served with same by electronic means to:

Charles E. Hawthorne
P.O. Box 2387
Ruidoso, NM 88355
Telephone: (505) 717-7922

*/s/ Todd A. Schwarz*
Todd A. Schwarz


\\Abq-tamarack\ProData\000065-049658\Pleadings\3348440.docx