IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEVE P. SHULTZABERGER,

    Plaintiff,

No. 2:17-cv-01028-KRS-CG

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant State Farm Mutual Automobile Insurance Company's motion for partial summary judgment. (Doc. 37). State Farm argues its insured, Plaintiff Steve Shultzaberger, cannot demonstrate that MW caused his injuries when her car t-boned his truck. According to State Farm, Shultzaberger, who suffered from debilitating neck problems before the wreck, needs a medical expert to tie the accident to a 2015 neck surgery, and the deposition testimony of Gregory Misenhimer, MD, Shultzaberger's surgeon, does not make the connection. State Farm contends that, as a result, Shultzaberger lacks an essential element of his claim for bad faith—absent MW's negligence, State Farm had no obligation to pay Shultzaberger's underinsured motorist benefits under the insurance policy. In Shultzaberger's view, an expert is unnecessary to show that the crash aggravated his preexisting, degenerative neck condition. With the consent of the parties to conduct dispositive proceedings, the Court has reviewed the parties' submissions as well as the record on summary judgement. Having done so, the Court **DENIES** State Farm's motion.

# FACTS

On May 22, 2013, Shultzaberger was returning home to Nogal, New Mexico from Ruidoso where he had picked up stucco from a local lumber company. (Doc. 54, Shultzaberger Aff., ¶ 5). As he drove in his Dodge pickup truck on Highway 48, Shultzaberger observed MW approaching in her parent's Toyota on Enchanted Forest Road from his right. (Docs. 1, Compl; 54, Shultzaberger Aff., ¶ 5; Shultzaberger Dep., at 24-25). MW was either talking on her cellphone or looking down; as Shultzaberger looked away, MW t-boned Shultzaberger's truck with the Toyota she was driving. (Doc. 54 Shultzaberger Aff., ¶ 5, Shultzaberger Dep. at 25). Shultzaberger's "head was thrown violently to the right and then rebounded to the left until it struck the driver side door." (Doc. 54, Shultzaberger Aff., ¶ 5).

Shultzaberger's neck hurt from the accident. (*Id.*, ¶ 6). First responders examined him, but "allowed [Shultzaberger] to go home for the night." (*Id.*). Three days later, Shultzaberger visited the Lincoln County Medical Center's emergency room "because [his] neck pain had gotten worse and [he] feared the whiplash [he] endured during the [accident] caused some injury to [his] recent neck surgery." (*Id.*, at ¶7). That procedure was a laminectomy performed at the Bonati Spine Institute in Florida in March 2013, about two months before the accident. (Doc. 54, Shultzaberger Aff., ¶¶ 1-2; Misenheimer Dep. at 9 (Feb. 2, 2018)). Shultzaberger had the laminectomy because of a decade-long struggle with neck pain that worsened from his work as a stone mason. (Doc. 54, Shultzaberger Aff., at ¶1). By 2011, the pain was so bad that he ceased employment as the owner and manager of White Mountain Masonry. (*Id.*). Following the surgery, Shultzaberger's improvement was marked, and his surgeon decided not to perform a second surgery that was initially contemplated. (*Id.*, ¶ 4). In fact, Shultzaberger returned to work as a stone mason, fully recovered. (*Id.*).

Following the trip to emergency room after the accident, pain from the whiplash got "progressively worse," medicine prescribed did not help, and Shultzaberger again stopped working. (*Id.*, ¶¶ 7-9). Shultzaberger visited several doctors in attempt to find relief. At least two providers refused to treat and/or perform surgery because Shultzaberger had been injured in car accident. (*Id.*, ¶¶ 10). In 2015, Shultzaberger was referred to Dr. Misenhimer, an orthopedic surgeon in El Paso, Texas. Shultzaberger did not tell Dr. Misenheimer about the car accident out of fear that Dr. Misenheimer too would refuse to treat him. (*Id.*, ¶¶ 11-12). Shultzaberger did, however, apprise Dr. Misenhimer of the earlier laminectomy. (Doc. 54, Misenhimer Dep., at 4 (Feb. 2, 2018)). Dr. Misenhimer operated on Shultzaberger in December 2015 and fused three neck vertebrae. (Doc. 54, Shultzaberger Aff., ¶12). Since the second procedure, Shultzaberger says, he has had no pain in his neck and "feel[s] as if [he] is 90% recovered from neck pain." (*Id.*). He has returned to work as a stone mason. (*Id.*).

Dr. Misenhimer was twice deposed in this case. In the first proceeding, the doctor testified that the wreck likely did not "totally disrupt[] the surgery . . . but the accident undoubtedly caused pain by a whiplash-type injury, where his head was either thrown forward and backward or side to side at the time of the accident." (Doc. 54, Misenhimer Dep., at 10 (Feb 2, 2018)). Dr. Misenhimer also explained that with whiplash both ligaments and muscles "will be injured, and they will be stretched, pulled." (*Id.*). Whiplash can aggravate "underlying conditions, degenerative disks[.]" (*Id.*). In a second deposition, Dr. Misenhimer clarified that "what [he] saw on [his] findings and x-ray was degenerative disc disease." (Doc. 54, Misenhimer Dep., at 5 (July 19, 2018). Dr. Misenhimer emphasized that "our spines are built to wear out . . . [s]o degenerative spinal process is just, in most cases, the natural wear and tear that we put through []our spines." (*Id.*). Nonetheless, the degenerative process "can be altered or

accelerated, or changed in some way, by a trauma, by an injury of some sort." (*Id.*). In considering Shultzaberger's first surgery, Dr. Misenhimer opined that "[i]f the patient had . . . a decompression laminectomy . . . a couple months before . . . an accident, he is not totally recovered from that procedure." (*Id.*, at 12-13). According to the doctor, "[i]t takes several months to get over that, so any undue or unexpected force applied to the spine can definitely cause an exacerbation of pain." (*Id.*, at 13).

Shultzaberger was charged over $135,000 by the hospital for the surgery and about $9,000 by Dr. Misenhimer for the surgery and treatment. (Doc. 54, Shultzaberger Aff., ¶ 13). Since the accident, Shultzaberger incurred more than $20,000 in "other doctor bills" and about $100,000 in lost wages. (*Id.*). Shultzaberger estimates his pain and suffering is worth $250,000. (*Id.*). Shultzaberger settled his claim against MW for the policy limits of her parents' insurance policy, $100,000, which in his view is not a full recovery. (*Id.*) Shultzaberger initiated the instant lawsuit to compel his insurance company to pay some or all of the $250,000 he has in underinsured motorist coverage, and for bad faith in failing to pay his claim. (Doc. 1-1, Compl.) State Farm removed the matter to this Court on October 12, 2017. (Doc. 1).

## STANDARD OF REVIEW

The Court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant demonstrates the absence of a triable issue of fact, the non-movant then has the burden "to set forth specific facts from which a rational trier of fact could find for" him. *Fox v. TransAm Leasing, Inc.*, 839 F.3d 1209, 1218 (10th Cir. 2016) (citation omitted). These facts must come from record evidence—"affidavits, deposition transcripts, or specific exhibits incorporated therein"—and "must establish, at a minimum, an inference of the

presence of each element essential to the case." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). In determining whether summary judgment is warranted, the Court is obligated to draw all reasonable inferences in favor of the nonmoving party. *See Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1004 (10th Cir. 2014). Unless "the facts are undisputed and reasonable minds can draw only one conclusion from [the proffered evidence]," the issue of causation "is generally a question of fact for the jury." *Pioneer Ctrs. Holding Co. ESOP & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (citation omitted).

**DISCUSSION**

As is relevant to this motion, Shultzaberger seeks damages for State Farm's alleged bad faith in failing to pay underinsured motorist benefits. In New Mexico, a plaintiff must prove legal entitlement to recover damages as a condition precedent for a claim of bad faith. *See Aragon v. Allstate Ins. Co.*, 185 F. Supp. 3d 1281, 1283-84 (D.N.M. 2016) (synthesizing New Mexico law on bad faith/UIM claims). To satisfy this threshold, the insured must demonstrate the underlying tortfeasor's negligence—"duty, breach, proximate cause, and loss or damages" that exceed the tortfeasor's policy limits. *State Farm Mut. Auto. Ins. Co. v. Barker*, 96 P.3d 336, 339 (N.M. Ct. App. 2004). Here, State Farm asserts Shultzaberger lacks expert medical testimony to establish that MW's negligence caused Shultzaberger to suffer any injury and most significantly the second surgery.[1]

Contrary to State Farm's implication, New Mexico law does not establish a bright-line rule requiring the testimony of a medical expert to prove causation. The cases on which State

---

[1] In its reply brief, State Farm claims in a final sentence that "Plaintiff has failed to meet his burden of proof on reasonableness and relatedness of the rendered treatment, including the spine surgery." This argument was not the basis on which State Farm moved for summary judgment in the first place, it is unsupported by record designation, and the Court declines to consider this matter further, having been newly raised in a reply brief. *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (district court need not consider new issues or arguments raised in a reply brief).

Farm relies are either medical malpractice, workers' compensation, or criminal cases. *See Woods v. Brumlop*, 377 P.2d 520, 523 (N.M. 1962) (the plaintiff's testimony that her hearing loss was caused by electroshock therapy was inadmissible to prove malpractice: "the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion"); *Folz v. State*, 797 P.2d 246, 260 (N.M. 1990) (finding expert testimony is not "mandatory" to establish emotional damages, but stating in *dicta* that "in many cases expert testimony will be required to establish causation"); *Buchanan v. Downing*, 394 P.2d 269, 272-73 (N.M. 1964) (rejecting application of *res ipsa loquitur* in medical malpractice case involving injections); *Baca v. Bueno Foods & Safeco Ins. Co.*, 766 P.2d 1332, 1334 (N.M. Ct. App. 1988) (applying the statutory requirement for expert testimony in workers' compensation cases); *State v. Newman*, 748 P.2d 1006 (N.M. Ct. App. 1989) (Hartz, J. concurring) (explaining in *dicta* in a criminal child-abuse case that "courts ordinarily do not permit juries to draw a conclusion regarding medical diagnosis or medical causation without expert testimony directly supporting the conclusion").

      None of the decisions above are particularly helpful in the automobile-accident context. The need for expert testimony in medical malpractice cases is more obvious because the plaintiff must show "the result or incident occurred *because* of the physician's failure to meet the standard [of care][.]" *Cervantes v. Forbis*, 389 P.2d 210, 213 (N.M. 1964) (emphasis added). In workers' compensation actions, the requirement for expert testimony is *statutory*. Criminal trials, of course, demand proof beyond a reasonable doubt. In other types of lawsuits, "the requirement for expert testimony . . . is the exception rather than the rule." *Cumming v. Nielson's, Inc.*, 769 P.2d 732, 735 (N.M. Ct. App. 1988) (construction case). At the very least, expert testimony must be helpful to the jury, and "[t]he corollary to this rule is that if the fact in

issue is within the ken of the average lay juror, expert opinion testimony is not necessary." *Mott v. Sun Country Garden Prods.*, 901 P.2d 192, 200 (N.M. 1995).

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1983), in diversity cases, the Court applies "state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007).[2] Where there is no "authoritative pronouncement" from the New Mexico Supreme Court, the Court must predict how the state's highest court would rule. *See Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). "[A] court formulating an *Erie* prediction should look first to the words of the state supreme court." *Peña v. Greffet*, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015). Here, *Morris v. Rogers*, 456 P.2d 863, 864 (N.M. 1969), provides sufficient guidance for the Court to answer the question presented.

In *Morris*, the plaintiff was hurt in accident involving two pickup trucks and was successful in obtaining damages at trial. Prior to the incident, he had suffered from five "cervical injuries," and underwent fusion surgery before the crash. After the wreck, a surgeon re-fused one cervical level and fused another. At trial, the surgeon opined that the new fusion "had some degree of trauma as a result of the prior injuries" in addition to "some deterioration [already] in progress." *Id*. (internal citations omitted). In fact, "[t]he doctor agreed that the condition resulting in surgery at the two levels could have occurred without the accident" and could not "specifically state how much" aggravation of the preexisting condition existed. On appeal, the defendant argued, in part, that the plaintiff had not proved damages with reasonable certainty. *Id.* The New Mexico Supreme Court disagreed and held that "[c]omparative testimony can be used to establish the extent of the aggravation." *Id.*

---

[2] Although there may be an academic debate about the interplay of federal and state law in this context, the parties do not claim that federal law should govern in this instance. The Court therefore does not address the issue further.

In reviewing the evidence, the court drew on the following: the plaintiff could not extend his cervical spine as before the accident; surgery was not recommended before the accident unless the plaintiff's pain persisted; plaintiff's "acute pain" had disappeared before the accident; afterward, the plaintiff's pain became severe; surgery was undertaken to "interrupt" the discomfort; and the plaintiff could perform his occupation before the accident, but thereafter "pain, severe headaches[] progressively increased until he was unable to do any work." *Id.* at 865. Although this evidence was insufficient to prove a permanent injury—and the court reversed on that basis—the defendant was liable for the aggravation caused from "a decrease in [bending] and extension of the cervical spine and an increase in the severity of neck pain which resulted in an inability to work and which necessitated surgery." *Id.*

Applying *Morris* here, the undisputed material facts establish, through a mix of medical and lay testimony, the type of the proof the New Mexico Supreme Court has accepted as sufficient. In the light most favorable to Shultzaberger, the lens through which the Court must evaluate the record at this stage in the litigation, *see Hornady*, 746 F.3d at 1004, Shultzaberger underwent neck surgery in March 2013 to alleviate pain he had experienced from years of work as stone mason. State Farm does not cite authority, and the Court has not found any, that Shultzaberger cannot testify to his own pain. The surgery was so successful that a second, follow up surgery initially contemplated was deemed unnecessary and Shultzaberger returned to work as a stone mason, pain free. Here too, Shultzaberger is a competent evidentiary source as to his ability to work and the reason related to him that the second procedure was not necessary.[3] In other words, all was fine until MW t-boned his truck a few months later.

---

[3] Arguably, Shultzaberger's averment in his affidavit his previous surgeon told him a second procedure was unnecessary is hearsay. State Farm, however, did not make this argument or move to strike the affidavit, and whatever objection might exist at this juncture is waived. *See Associated Press v. Cook*, 513 F.2d 1300, 1303 (10th

Thereafter, Shultzaberger's pain returned, he could no longer work as stone mason, and, ultimately, he underwent a fusion of three neck vertebrae in December 2015 for the pain, which thereafter dissipated. As above, Shultzaberger certainly may testify as to his pain and working habits, and Dr. Misenhimer confirmed Shultzaberger underwent the second surgery, which State Farm does not dispute. Even assuming the average juror could not infer causation from these facts alone, State Farm glosses over critical testimony from Dr. Misenhimer that directly and circumstantially evidence causation: Dr. Misenhimer opined (1) that Shultzaberger had not fully healed from the first surgery at the time of the accident; (2) the accident "undoubtedly caused pain," from whiplash; (3) "the mechanism of injury from a car accident certainly could have caused the pain" for which Shultzaberger sought treatment and underwent the second surgery; (4) whiplash can "aggravate degenerative . . . conditions"; (5) Shultzaberger's x-ray and exam was indicative of degenerative disc disease; (6) the degenerative process can be accelerated by injury; and (7) the fusion procedure addresses conditions caused by natural aging or traumatic injury. (Doc. 54, Misenhimer Dep., at 10 (Feb. 2, 2018); Misenhimer Dep. at 5, 12-13 (July 19, 2018)). It is true that Dr. Misenheimer does not specifically say the accident caused the need for the second surgery, and a jury will certainly be able to evaluate the lack of testimony in this regard. Under *Morris*, the elements of aggravation nonetheless have been demonstrated through "comparative testimony."

Based on the record before the Court, the evidence, including reasonable inferences viewed in Shultzaberger's favor, establish that Shultzaberger had preexisting, debilitating neck pain, which was alleviated by surgery and cured at the time of the accident. The pain returned after MW's car t-boned Shultzaberger's pickup, he could no longer work, and he underwent a

---

Cir. 1975) (holding that a party can waive admissibility objections in connection with summary judgment affidavits).

disc fusion with Dr. Misenheimer for the pain. According to Dr. Misenhimer, the accident could have caused the pain and aggravated existing injuries. The second surgery was successful, and Shultzaberger works again and is free from neck pain. Although the jury may ultimately reject this evidence, a genuine issue of material fact precludes judgment as a matter of law on the essential element of proximate causation.

## CONCLUSION

For the reasons stated above, Shultzaberger's testimony combined with the opinions of Dr. Misenhimer create a genuine dispute of material fact that MW proximately caused an aggravation of an existing condition resulting in pain and surgery to alleviate that pain. Although the jury is not compelled to find the testimony credible, it is for the jury to consider and not for the Court to weigh. Judgment as a matter of law is not appropriate.

**IT IS, THEREFORE, ORDERED** that Defendant's motion for summary judgment is **DENIED**.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent